**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | |
| | : | **No. 1:24-cr-120 (TNM)** |
| | : | |
| **ERIK ANTONIO HERNANDEZ PINEDA,** | : | |
| **also known as** | : | |
| **"Erick Antonio Hernandez Pineda,"** | : | |
| **also known as "Lucky,"** | : | |
| | : | |
| **Defendant.** | : | |

**<u>GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING</u>**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its Memorandum in Aid of Sentencing.

On June 3, 2024, the Defendant, Erik Antonio Hernandez Pineda, pleaded guilty to Count One of the Indictment, charging him with Possession of a Firearm by a Noncitizen Unlawfully Present in the United States, in violation of 18 U.S.C. § 922(g)(5)(A). Pursuant to the Plea Agreement, the parties have agreed that a sentence between 18 and 24 months is the appropriate sentence for the offense to which the Defendant pleaded guilty. *See* ECF No. 16, Presentence Investigation Report ("PSR") ¶ 12. Accordingly, for the reasons herein, and based on the 18 U.S.C. § 3553(a) factors, the United States requests that the Court sentence the Defendant to a 24-month term of incarceration to be followed by three years of supervised release.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

In pleading guilty, the Defendant admitted to purchasing the charged 9mm Springfield XD firearm on January 20, 2023; discharging that firearm on September 18 and 24, 2023, in Washington, D.C.; and knowing on each of these occasions that he was a noncitizen unlawfully in the United States and that it was unlawful for him to possess a firearm. *See* ECF No. 12, Statement

1

of Offense ("SOF") ¶¶ 1, 3, 26.

The Federal Bureau of Investigation (FBI) investigation into the 18th Street gang began focusing on the Defendant when they learned he purchased the charged firearm from another 18th Street member in January 2023. Specifically, the charged firearm was used in a shooting on January 11, 2023, on a Washington, D.C. Metrobus where two children (aged 6 and 9 at the time) were shot as bystanders to an altercation between two individuals. Review of a phone recovered from Bryan Delfino Vasquez-Izara, also known as "Smokey,"[1] revealed a conversation between Vasquez and Bradley Andree Martinez-Mora, also known as "Joker,"[2] the following day discussing the shooting. In this conversation, Vasquez asked Martinez if he knew anyone trying to buy a gun for $900 and sent the below photograph of a Springfield XD 9mm handgun.



---

[1] Vasquez was charged in Counts 1 and 3 of the Superseding Indictment in 23-cr-43, charging numerous 18th Street members with, *inter alia*, violations of Racketeer Influenced and Corrupt Organizations Act and Violent Crimes in Aid of Racketeering. *See* PSR ¶ 37. On June 11, 2024, Vasquez pleaded guilty before this Court to an information charging him with RICO Conspiracy and Carrying a Pistol Without a License for his role in acts related to his membership in the gang. *Id.*

[2] Martinez was also charged in Counts 1 and 3 of the Superseding Indictment in 23-cr-43, and on May 10, 2024, a jury trial found him guilty of these counts for his role in acts related to his membership in the 18th Street gang. PSR ¶ 32.

One week later, on January 19, 2023, Vasquez sent a message to the Defendant stating "yo sica[3] gave me this number u still need the dog." The Defendant confirmed he would still like to purchase it and they went on to discuss the price. On January 20, 2023, messages indicate that Vasquez drove to the Defendant in Alexandria, Virginia to transfer possession of the firearm.

As part of the FBI's investigation, a surveillance camera was installed in the hallway of the Defendant's residence in Washington, D.C. on September 11, 2023. In the two weeks following its installation, this camera captured relevant footage of the Defendant exiting and returning to the building before and after discharging this firearm on two occasions.

On September 18, 2023, the Defendant recorded a video of himself shooting this firearm into the air after saying "Bitch" into the camera.

 

---

[3] Law enforcement believes "Sica" to be short for "Sicario," which is the alias of Gerlin Neptali Diaz Lopez, a known member of 18th Street who was charged in Counts 1 through 6 of the Superseding Indictment in 23-cr-43, and on May 13, 2024, a jury trial found him guilty of these counts for his role in acts related to his membership in the 18th Street gang. PSR ¶ 29.

The same minute this video was recorded, at 1:37 am, the Metropolitan Police Department (MPD) received a ShotSpotter alert in the vicinity of the Defendant's residence. Upon responding to this area, MPD recovered two 9mm shell casings. These were entered into the National Integrated Ballistic Information Network (NIBIN) and yielded a lead to the January 11, 2023 Metrobus shooting.

Again, on September 24, 2023, at approximately 6:48 PM, a ShotSpotter alert was generated for the vicinity of the Defendant's residence. MPD officers responded to that location and recovered one 9mm shell casing in the alley behind the building. This also yielded a NIBIN lead to the two previous shootings.

Between these two shootings, on September 20, 2023, the Defendant had pleaded not guilty to domestic violence charges in Alexandria, Virginia, but was admitted to a diversionary program that granted him a two-year probationary term to comply with the conditions of the program. *See* PSR ¶ 57. This plea also included a final order of protection that barred him from possessing a firearm and required him to sign an acknowledgement of that fact. Mere hours before this court appearance, the Defendant seemingly photographed himself with the charged firearm in the clothing he wore to court that morning. The location of this photo in his device, in a folder labeled "Instagram," indicates this photograph was also posted on social media.

| | |
|---|---|
| Tags | Evidence |
| File Name | IMG_4461.JPG |
| Type | Picture |
| Album Title | Instagram |
| Directory | DCIM/104APPLE |
| Created Date/Time - UTC+00:00 (M/d/yyyy) | 9/20/2023 10:57:48 AM |
| UUID | F4C983E5-9835-4FC0-8A27-16A11D4C6072 |
| Modified Date/Time - UTC+00:00 (M/d/yyyy) | 10/31/2023 7:24:06 PM |
| Media | |



This order of protection formed the basis for Count Two of the Indictment charging the Defendant with violating 18 U.S.C. § 922(g)(8) for possessing a firearm while under a domestic violence protective order.

On December 8, 2023, the FBI executed a search warrant at the Defendant's residence and recovered three live 9mm rounds from a drawer that also contained an identification card and bank card with the Defendant's name and information on it. Law enforcement also recovered the Defendant's cell phone. The Defendant spoke to law enforcement later that day and again on December 13, 2023, and admitted to possessing the Springfield XD 9mm firearm on September

24, 2023, and having bought it in January 2023. He further identified himself in the below photograph, taken July 14, 2023, from his cell phone as the individual with the white face covering holding what he identified as the Springfield XD 9mm firearm, with two individuals also holding firearms (one that appears to have a silencer attached to it).



Law enforcement reviewed the Defendant's phone after his arrest and learned that, not only did he discharge this firearm twice, he also used it as part of his persistent harassment and intimidation of his wife during the pendency of the domestic violence case against him for an assault against her on May 17, 2023, which provides the basis for the four-level enhancement under USSG §2K2.1(b)(6)(B). *See* PSR ¶¶ 22–24; 46. The facts of the underlying domestic violence case are briefly described below in Section II(B)(a) and paragraph 57 of the PSR. Within

two months of this assault, he began relentlessly messaging her threats to her life and others close to her. For example, on July 11, 2023, he messaged her threats against her mother: "in uber heading there now" "u wanna sa[y] by[e] to your mom" "I wanna hear your mom" "say bye" "I'm outside your mom house" "want me to call u from her phone" "lol."

The following day, on July 12, 2023, he messaged her, "see u tonight" "u gonna die" and "u die tonight." He proceeded to tell her, "Cut your head off" "bitch." When she asked why he was trying to destroy their son, he responded "Fuck that kid" "Fuck your ugly asss both" "Bitch" "Ima se[t] you on fire" "Ima kill u."

After this occurred again multiple times, on July 28, 2023, the Defendant brandished this firearm on a FaceTime call with her and later came to the residence she was staying at, simultaneously sending threats to "light [her] shit up." *See* SOF ¶¶ 6–8. He told her that he was "calling the boys" and she was "gonna see a show" "4 of July" "bitch." He repeatedly messaged her counting down the minutes until he arrived to "light this bitch up." She called 911 during this incident and sought an emergency protective order on July 29, 2023, which was in effect until August 1, 2023. The Defendant continued to send her threatening messages during this period.

This behavior continued for weeks after this incident. For example, on August 13, 2023, he messaged her repeatedly while she was at work saying he was outside and sent her a video of the exterior of her workplace. He messaged her repeatedly: "I'ma be here" "waiting bitch" "ima follow u bitch" "let me see u walk out with a n[----] ima shoot y'all up" "bitch" "fuck the police" . . . "my boy gonna follow u" "u don't even know" "who" "bitch." She sought another emergency protective order on August 21, 2023, which lasted until August 24, 2023.

## II.     DISCUSSION AND SENTENCING RECOMMENDATION

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a).  *See United States v. Gall*, 128 S. Ct. 586, 596 (2007).  These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; (3) the Sentencing Guidelines and related Sentencing Commission policy statements; and (4) the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

The United States recommends that the Court sentence the Defendant to a term of 24 months' (2 years) incarceration, consistent with the parties' plea agreement, to be followed by three years of supervised release.  Under the totality of circumstances, including the nature and seriousness of the Defendant's conduct and his history and characteristics, the United States submits that such a sentence of incarceration serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

### A.     <u>Nature And Circumstances of The Offense</u>

As described in detail in the Factual Background, the nature and circumstances of the Defendant's offense warrants a significant sentence. The juxtaposition of him posing and posting to social media with the charged firearm mere hours before signing an acknowledgement in open court that he would not possess firearms is striking. Furthermore, carrying that firearm and discharging it only four days later demonstrates an extreme disregard for the rule of law.

Significantly, the charged gun possession did not stop at possession; the Defendant used this firearm, again and again. He not only recklessly discharged this firearm twice, but he used his

possession of it to fuel the terror he inflicted upon his wife. He made it known to her that he possessed this firearm and was eager to use it to make her act the way he wanted, and violated court orders in doing so. Accordingly, a sentence at the top end of the applicable Guidelines range would account for the severity of his conduct and the harm he has caused to his family, and to the District and surrounding areas.

B. **History and Characteristics**

Despite the Defendant having no prior criminal convictions, his history evinces a sustained pattern of criminal conduct, possession of additional firearms, drug use, and gang affiliation, which the Government asks the Court to take into account at sentencing.

a. *Criminal History*

At the age of 18, in October 2015, the Defendant was first arrested for possessing an open container of alcohol in a vehicle when MPD officers responded to a call for a burglary in progress with a lookout of a red Honda, which matched the vehicle the Defendant was in. PSR ¶ 56. Less than a month later, he was arrested and ultimately indicted[4] for various charges, including kidnapping while armed, robbery while armed, assault, and criminal street gang affiliated felony or violent misdemeanor while armed. PSR ¶ 60. The complainants reported they were exiting a metro station and were followed by a group of perpetrators who pushed them to the ground and brandished knives while going through their pockets and removing their phones, cash, and coats. Another complainant reported that he approached the group and when he tried to run, he was chased by the suspects. The Defendant was identified in a show-up with a complainant as one of the perpetrators who "started it" and had a knife. One of the complainants reported that one of the perpetrators said "18th Street Reigns" while he chased the complainant. The Defendant was

---

[4] This case was dismissed approximately two and a half years later, on March 19, 2018.

searched incident to arrest and a knife was recovered concealed in the right sleeve of his jacket.

On May 17, 2023, the Defendant was arrested for an assault against his wife. The Government asks the Court to consider the specific details of this incident as laid out in paragraph 57 of the PSR. In short, his wife told officers that she was assaulted by the Defendant and responding officers observed that she had multiple bruises on her left eye, nose, and temple. She also reported that she had jumped out of the window to escape the assault. Their shared child, approximately two years old at the time, was also in the home at the time. After pleading not guilty to these charges and entering a diversionary program on September 20, 2023, the Defendant was ordered to: undergo a substance abuse screening and complete any required assessments or evaluations and participate in treatment; complete additional programs including a Batterer's Intervention Program; and comply with the protective order. His probation officer reported that, in the two and a half months prior to his incarceration in the instant matter, he did not enroll in the required courses, did not undergo a substance abuse evaluation, and tested positive for cocaine during both drug screenings he took.

In his interview with probation in preparation for this sentencing, the Defendant referred to this incident as "an accident." PSR ¶ 74. In his testimony at his immigration hearing on February 7, 2024, he testified under oath before Immigration Judge Karen Donoso Stevens that he only argued with his wife, he did not assault her, and that his wife lied in her reports to law enforcement about this assault. Despite abundant evidence supporting his perpetration of this assault on his wife, as well as the threatening text messages detailed above, the Defendant continues to deny the impact of his violent actions against his wife. Although the government credits the Defendant's acceptance of responsibility for this course of conduct as part of this case, his continued rejection of responsibility for the underlying assault, even under oath, speaks volumes about the Defendant's

character.

b. *Additional Gun Possession*

Throughout 2023, while the Defendant possessed the charged firearm, evidence from his cell phone establishes that he possessed at least two additional firearms. On June 3, 2023, the Defendant recorded a video of himself pulling the trigger on a handgun, visually distinct from the charged Springfield XD 9mm firearm, while pointing it at the camera.



Just one minute prior to this video, he recorded another video of a full magazine in his lap.



On November 25, 2023, the below photo was captured on his device, of yet another distinct handgun with both a standard magazine and a full extended magazine next to it.



This evidence demonstrates that the charged possession was part of the Defendant's sustained pattern of illegal gun possession. Furthermore, the Defendant's likely possession of the above firearm two months after the entry of the final protective order in his domestic violence case only further evinces his repudiation of the rule of law.

   c. *Drug Use*

  As noted above, the Defendant tested positive for cocaine twice in 2023 in violation of the terms of his diversionary program. PSR ¶ 57. However, the Defendant reported to probation that he has not used cocaine for a number of years. PSR ¶ 88–89.

  The Defendant's continued drug use, in violation of the terms of his supervision, is highly concerning on its own; doing so while in possession of a firearm is even more so. Congress has recognized the distinct danger of drug users possessing firearms by specifically criminalizing this conduct. *See* 18 U.S.C. § 922(g)(3) (criminalizing possession of a firearm by anyone "who is an

unlawful user of or addicted to any controlled substance"). Furthermore, the Defendant's ongoing lies about his drug use during this time evinces his refusal to reform, and demonstrates the Defendant's disturbing habit of determining the truth is what he says it is, no matter how belied by the evidence his narrative is.

        d. *18th Street Affiliation*

Further evidence of this pattern lies in the Defendant's insistence he is not affiliated with the 18th Street gang. Not only does he deny affiliation or involvement with the group, he states that "this classification bothers him." PSR ¶ 78. Even putting aside FBI source reporting of his affiliation, the facts of his 2015 robbery arrest involving statements from his co-defendant that "18th Street Reigns," and that he purchased the charged firearm from an 18th Street gang member who was convicted of criminal acts in furtherance of 18th Street before this very Court, he has advertised his affiliation with this group outside of this courtroom over many years.

For example, in the below photograph (redacted by the government) saved to the "Instagram" folder of his cell phone on May 1, 2021, the Defendant is posing with the 18th Street gang sign next to his infant child.



The Defendant captured numerous videos and photos to his device using this hand sign over the years, signaling his affiliation with the group. More recently, on November 12, 2023, less than one month before his arrest, he recorded himself again flashing the same sign:



    Additionally, on August 6, 2023, an individual called the Alexandria Police Department to

report that they were the victim of an assault by the Defendant. This individual reported that the

Defendant was known to carry a handgun and is affiliated with 18th Street. Call detail records for

the Defendant's phone number also bear out that, as recently as 2023, the Defendant was in contact

was former 18th Street leader Carlos Giovani Linares Boteo, also known as "Tiny."[5]

---

[5] Linares was charged in Counts 1 and 3 of the Superseding Indictment in 23-cr-43 and on April 19, 2024, pleaded guilty before this Court to Count 1 of the Indictment for his role in acts related to his membership in the gang. PSR ¶ 39.

It is hardly surprising the Defendant would seek to distance himself from this group before this Court. Put simply, "[u]nlike many racketeering enterprises . . . which perpetrate violence as an ancillary function to their core business – whether it be trafficking drugs or another racket – 18th Street's core business is violence." *See* 23-cr-43, ECF No. 250, "Sentencing Memorandum by USA as to Carlos Giovani Linares Boteo" at 16. When affiliation with this violent group benefited the Defendant over at least the last decade, he proudly announced his affiliation. He now seeks to disavow it and in doing so, yet again, denies reality.

In conclusion, despite the Defendant having a high school diploma and reporting consistent employment over the last decade, PSR ¶¶ 91, 94–101, he has shown he is undeterred in his pattern of violent, criminal conduct and has demonstrated an alarming lack of remorse for his actions. All the while knowing he was illegally present in the United States and facing likely deportation as a consequence of his criminal conduct. PSR ¶ 14. The Defendant's rejection of accountability in favor of the most convenient truth for him in a given moment illustrates his relentless prioritization of himself and his desires above all else, regardless of the harm it causes.

C.   **The Need For The Sentence To Be Imposed**

Under the totality of the circumstances, a 24-month sentence of incarceration serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a). Through the Defendant's actions, he has repeatedly rejected the rule of law in favor of his own desires, regardless of how they harm others, particularly those closest to him. A significant sentence would reflect the seriousness of the offense and protect the public from further crimes of the defendant. Accordingly, a 24-month sentence would appropriately account for the grave harm caused by the Defendant.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, the United States recommends that the Defendant, Erik Antonio Hernandez Pineda, be sentenced to 24 months' incarceration to be followed by a term of three years' supervised release.


Respectfully Submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:    /s/ *Gaelin Bernstein*
GAELIN BERNSTEIN
N.Y. Bar No. 6081079
Trial Attorney
United States Attorney's Office
601 D. Street NW
Washington, D.C. 20530
(202) 252-6743
Gaelin.Bernstein2@usdoj.gov


### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 30, 2024, I caused a copy of the foregoing to be served on counsel of record via electronic filing.


/s/ *Gaelin Bernstein*
GAELIN BERNSTEIN
Trial Attorney